# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| RONNIE MARIN, et al., individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. ) ) |
| v. | ) CLASS ACTION COMPLAINT ) JURY TRIAL DEMANDED ) |
| JIM BAKKER and MORNINGSIDE CHURCH PRODUCTIONS, INC., | ) ) ) |
| Defendants. | ) ) ) |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Marin, on behalf of himself and all other similarly situated, bring this action against Defendants. Plaintiff's allegations are based upon his own knowledge and belief as to his own acts and upon the investigation of his counsel as to all other matters:

### INTRODUCTION

1. Defendants are televangelist Jim Bakker and a related corporate entity. Defendants sell a product called "Silver Solution" (the "Product") which is promoted on the Jim Bakker Show and on defendants' website. Defendants claim Silver Solution" is a cure and treatment for COVID-19, caused by the novel coronavirus. But Silver Solution cannot cure or treat COVID-19, or any other ailment for that matter. Further, although the bottle says it is "clinically tested" and "all natural," it is neither.

2. Defendants' conduct violates the Missouri Merchandising Practices Act, breaches state warranty law, and constitutes common law fraud.

1

3. Plaintiff brings this action as a class action on behalf of himself and similarly situated consumers in Missouri and throughout the country to recover damages for defendants' fraudulent practices.

**PARTIES**

4. Plaintiff Ronnie Marin is a resident of Missouri. Mr. Marin purchased several Products beginning in December of 2019 through March 2020.

5. Plaintiff purchased Silver Solution because he thought it could prevent or cure COVID-19, was all natural, clinically tested, and effective at treating the cold and flu.

6. In making his purchase decision, he relied on the statements he saw and heard on the Jim Bakker Show that Silver Solution was effective at treating viruses such as COVID-19, SARS and H1N1 as well as common cold and flu, and the statements he saw on the bottle that said Silver Solution was "all natural" and "clinically tested."

7. Plaintiff believes the term "all natural" means that a product has not been formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources.

8. Plaintiff believes the term "clinically tested" means that a product has been tested using reputable scientific methodology and shown to be effective at fulfilling the promises made by the seller and manufacturer.

9. Defendant Jim Bakker is an individual who resides in Missouri.

10. Defendant Morningside Church Productions, Inc., is a Missouri corporation located in Blue Eye, Missouri.

11. The Defendants do business as "Jim Bakker Show Ministry."

12. Defendants offer Silver Solution for sale and made and/or endorsed the false and misleading statements complained of herein.

**JURISDICTION AND VENUE**

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and more than two-thirds of the class members live outside Missouri.

14. This Court also has subject matter jurisdiction under 28 U.S.C. § 1331 because the claims herein arise in part out of violations of federal law.

15. This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b) and (c), because: (i) Defendants are actively doing business in this State and subject to personal jurisdiction throughout the State; (ii) Defendants transact business in the State and in the District based on their sales with residents of the District; (iii) upon information and belief Defendants have committed unlawful acts in the District by and through their sales practices with residents of this District; and (iv) a substantial part of the events or omissions giving rise to the claim occurred in this District.

**FACTUAL ALLEGATIONS**

17. Mr. Marin saw the "Jim Bakker Show" on or around February 12, 2020 and saw the exchange between Mr. Bakker and Sherill Sellman, a so-called "naturopathic doctor" and "natural health expert":



**Bakker:** This influenza that is now circling the globe, you're saying that silver solution would be effective.

**Sellman:** Well, let's say it hasn't been tested on this strain of the coronavirus, but it has been tested on other strains of the coronavirus and has been able to eliminate it within 12 hours.

**Bakker:** Yeah.

**Sellman:** Totally eliminate it, kills it. Deactivates it. **Bakker:** Yeah.

**Sellman:** And it boosts your immune system so then you can support the recovery, 'cause when you kill the virus then the immune system comes into action to clear it out, so you want a vibrant immune system as well as an ability to deactivate these viruses.

4

>    …
>
>    **Sellman:** Silver Sol has been proven by the government that it has the ability to kill every pathogen it has ever been tested on including SARS and HN.

Bakker then offers Silver Sol products to viewers for $80 or $125.

18. The Jim Bakker Show's website, which contains numerous Reuters articles on the global spread and dangers of COVID-19, also included an article entitled "Covid-19 coronavirus, building immunity, staying healthy, *and the benefits of Silver Solution*." (Emphasis added).

<u>Silver Solution is Not Effective and Treating or Preventing Covid-19, or Any Other Illness</u>.

19. On March 6, 2020 the Food and Drug Administration sent defendants a warning letter which "request[ed] that you take prompt action to cease the sale of such unapproved and unauthorized products for mitigation, prevention, treatment, diagnosis or cure of COVID-19."

20. A similar letter was sent to defendants by the New York State Attorney General on March 11, 2020.

21. In addition, contrary to defendants' statements, the federal government has not stated that the consumption of silver is effective against SARS or H1N1. Nor has any reliable source.

22. However, this is not the only time Mr. Bakker has deceived his viewers by touting the benefits of Silver Solution. He has also peddled it as a cure for "Cold & Flu."



23. However, the claim that Silver Solution will help with cold or flu is also false. Consuming silver is not safe or effective to treat or prevent any ailments. No valid scientific studies exist that demonstrate that silver has any health benefits at all.

24. Indeed, the National Institutes of Health states that colloidal silver (like Silver Solution) can be dangerous to people's health and that there is no scientific proof that it is effective to treat any disease or condition.

25. One risk of ingesting colloidal silver is the onset of argyria, a condition where the skin can turn a blue-gray color, which can be permanent.

The Product Has Not Been Clinically Tested

26. The Product itself bears the phrase "Clinically Tested."

6



27. Combined with the representations concerning COVID-19 and the cold and flu, a reasonable consumer would believe that Silver Solution has been clinically tested and approved for those purposes. But it has not been clinically tested for its effects on COVID-19, the common cold, or the flu.

28. In addition, defendants do not warn consumers of the risk of developing argyria.

The Product is Not "All Natural."

29. The Product itself also bears the phrase "All Natural."

7

30. A reasonable consumer would believe that the term "all natural" means that the ingredients are found in nature and is not synthetic, and that the ingredients were not formulated or manufactured by a chemical process, or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources.

31. But as shown on the bottle's ingredient list, Silver Solution contains deionized water, which is not "all natural."



32. Deionized water is not found in nature and is artificially created through a process of distillation or reverse osmosis.

33. Water, as found in nature, and even tap water, contains beneficial minerals such as sodium, iron, and magnesium. Through an industrial process, minerals are removed from deionized water. Indeed, the consumption of deionized water may result in the withdrawal of minerals from the body.

34. Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

35. Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that deionized water is synthetic.

36. Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendants' prominent claims, representations, and warranties that the Products are "All Natural."

37. Defendants did not disclose that deionized water is a synthetic ingredient.

## CLASS ACTION ALLEGATIONS

38. Plaintiff brings this class action on behalf of himself and all other similarly situated consumers in the United States. The proposed Class includes all individuals who purchased one or more Silver Solution Products in the United States (the "Class").

39. The requirements of Federal Rule of Civil Procedure 23 are satisfied for the Class.

40. The proposed Class is so numerous that individual joinder of all their members is impracticable. On information and belief, members of the Class number at least in the thousands. The precise number of Class members and their identities are unknown to Plaintiff at this time but will be ascertained through appropriate discovery. Class members may be notified of the pendency of this action by mail, publication and/or through the records of Defendants and third-party retailers and vendors.

41. There are many common questions of law and fact affecting Plaintiff and Class Members. Common legal and factual questions include, but are not limited to:

(a) whether Defendants advertised or marketed Silver Solution in a way that was false or misleading;

(b) whether Silver Solution is effective at treating or curing COVID-19, SARS, H1N1 or any coronavirus.

(c) Whether Silver Solution is effective at treating or curing cold or flu;

(d) Whether the efficacy of Silver Solution has been clinically tested using reputable scientific methodology;

(e) Whether a reasonable consumer would consider deionized water to be "all natural."

(f) whether defendants are responsible for the representations made on the bottle and on the Jim Bakker Show and its website;

(g) whether, by the misconduct set forth in this complaint, Defendants have engaged in unfair, fraudulent or unlawful business practices;

(h) whether Defendants' conduct was committed knowingly or intentionally;

(i) whether Defendants breached their express warranties;

(j) whether Defendants breached their implied warranties;

(k) whether Defendants' conduct violates the Magnuson-Moss Act;

(l) whether Defendants' conduct constitutes violations of the Missouri Merchandising Practices Act;

(m) whether Defendants were unjustly enriched by their conduct;

(n) whether Class Members suffered an ascertainable loss as a result of the Defendants' misrepresentations; and

(o) whether, as a result of Defendants' misconduct as alleged herein, Plaintiffs and Class members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

42. Plaintiff's claims are typical of the claims of the proposed Class because Plaintiff and Class Members were harmed in the same manner by the same conduct. Plaintiff and Class Members have all sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

43. Plaintiff will fairly and adequately represent and protect the interests of the Class. His interests do not conflict with the interests of the Class he seeks represent, he has retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.

44. The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members. Given the relatively small amount of individual damages at stake, individual litigation is not practicable. Individual Class members will not wish to undertake the burden and expense of individual cases. In addition, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial

system. Individualized litigation also presents the potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

45. Questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. Injuries sustained by Plaintiff and Class Members flow, in each instance, from a common nucleus of operative facts, i.e., defendants' misrepresentations about Siler Solution. In each case, Defendants deceived Plaintiff and Class Members as to the efficacy of Silver Solution and whether Silver Solution is "clinically tested" or "all natural." The resolution of these central issues will be the focus of the litigation and predominate over any individual issues.

## **COUNT I**
**Violation of the Magnuson-Moss Warranty Act**

46. Plaintiff realleges and incorporates by reference each allegation set forth above.

47. Silver Solution is a consumer product as defined in 15 U.S.C. § 2301(1).

48. Plaintiff is a consumer as defined in 15 U.S.C. § 2301(3).

49. At all relevant times, Defendants were suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

50. The amount in controversy of each individual's claim is more than the sum or value of twenty-five ($25) dollars.

51. In connection with the sale of Silver Solution, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which expressly warranted that Silver Solution could cure or treat COVID-19; could cure or treat cold or flu; is clinically tested; and is all natural. In fact, Silver

Solution cannot treat or cure any disease, has not been clinically tested for its capacity to do so, and is not "all natural."

52. Defendants breached the express written warranties above and violated the statutory rights of Plaintiff and pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

53. Plaintiff has been damaged as a result in an amount to be determined at trial.

## COUNT II
### Violation of the Missouri Merchandising Practices Act (MMPA)

54. Plaintiff repeats and re-alleges the allegations of the preceding paragraphs as if fully set forth herein.

55. The MMPA provides that it is unlawful to "act, use or employ. . . deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce. . . ." RSMo. § 407.020.1.

56. Defendants' conduct as described above constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce in that Defendants sold the Product with the representation that Silver Solution could cure or treat COVID-19; could cure or treat cold or flu; is clinically tested; and is all natural. In fact, Silver Solution cannot treat or cure any disease, has not been clinically tested for its capacity to do so, and is not "all natural."

57. Defendants' misrepresentations and omissions as set forth in this complaint are material in that they relate to matters that are important to consumers and/or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff.

58. In violation of the MMPA, Defendants employed fraud, deception, false promise, misrepresentation and/or the knowing concealment, suppression or omission of material facts in its sale and advertisement of the Products.

59. Plaintiff purchased the Product for personal, family, or household purposes.

60. Plaintiff suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein.

61. Had Plaintiff known the truth about the Products, he would not have purchased the Product, or would have purchased the Product on different terms.

## COUNT III
### Breach of Express Warranty Under Missouri Law

62. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

63. Defendants expressly warranted that that Silver Solution could cure or treat COVID-19; could cure or treat cold or flu; is clinically tested; and is all natural. In fact, Silver Solution cannot treat or cure any disease, has not been clinically tested for its capacity to do so, and is not "all natural."

64. Plaintiff was injured as a direct and proximate result of the breach because he would not have purchased Silver Solution if he had known the truth, or would not have a paid a premium for it, and because Silver Solution did not have the quality or characteristics promised.

65. Plaintiff has sustained damages due to Defendants' breaches of their express warranties in an amount to be determined at trial.

## COUNT III
### Breach of Implied Warranty under Missouri law

66. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

67. Defendants impliedly warranted that Silver Solution could cure or treat COVID-19; could cure or treat cold or flu; is clinically tested; and is all natural.

68. Defendants breached these warranties because Silver Solution cannot treat or cure any disease, has not been clinically tested for its capacity to do so, and is not "all natural."

69. Plaintiff has sustained damages due to Defendants' breaches of their implied warranties in an amount to be determined at trial.

## COUNT IV
### Common law fraud

70. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

71. Defendants falsely represented to plaintiff that Silver Solution could cure or treat COVID-19; could cure or treat cold or flu; is clinically tested; and is all natural.

72. At the time defendants made these representations, they knew them to be false.

73. Defendants made these statements with the express purpose of defrauding plaintiff.

74. Plaintiff relied on defendants' representations and were entitled to rely on those representations. In reliance on those representations, plaintiff purchased Silver Solution.

75. If defendants had not made those representations, plaintiff would not have bought Silver Solutions.

76. As a result of defendants' fraudulent conduct, plaintiff has suffered damage in the amount of the purchase price of the product and under applicable law.

## COUNT V
### (Unjust Enrichment)

77. Plaintiff re-alleges and incorporates by reference each allegation set forth above.

78. Plaintiff and Class Members conferred a benefit on Defendants by purchasing Silver Solution. Defendants were aware of this benefit, and at the same time aware that Silver Solution cannot treat or cure any disease, has not been clinically tested for its capacity to do so, and is not "all natural."

79. Defendants have been unjustly enriched by retaining the revenues derived from consumers' purchases of Silver Solution, which retention under these circumstances is unjust and inequitable because of Defendants' fraud and misrepresentations, which caused injuries to Plaintiff.

80. Because Defendants' retention of the benefit conferred on it by Plaintiff and Class members is unjust and inequitable, defendants must pay restitution to Plaintiff.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays the Court issue judgment against Defendants, as follows:

- A. For an order certifying the nationwide class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the Class Representatives and his attorneys as Class Counsel;
- B. For an order declaring that defendants' conduct violates the statutes and common law referenced herein;
- C. For an order finding in favor of the Plaintiffs and the nationwide Class on all counts asserted herein;
- D. For an order awarding actual, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;
- E. For an order of restitution and all other forms of equitable monetary relief;
- F. For injunctive relief as pleaded or as the Court may deem proper;
- G. For any such equitable relief as the Court shall deem just and proper;
- H. For any attorney fees available under any state or federal statute or common law;

I.  For any punitive and/or exemplary damages, including but not limited to trebling, available under any state or federal statutory or common law;

J.  For any penalty or other type of civil damages or award under any state or federal statute

K.  For prejudgment interest on all amounts awarded; and

L.  For an order awarding Plaintiff and their attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted,

By: /s/ Tim Dollar
Tim E. Dollar        MO # 33123
Tom Hershewe     MO #57642
Josh Becker          MO #68547
DOLLAR BURNS & BECKER, L.C.
1100 Main Street, Suite 2600
Kansas City, MO 64105
Phone: (816) 876-2600
Fax: (816) 221-8763
timd@dollar-law.com
tom@dollar-law.com
joshb@dollar-law.com

and

Adam R. Gonnelli *(pro hac vice pending)*
THE SULTZER LAW GROUP, P.C.
280 Highway 35, Suite 304
Red Bank, NJ 07701
Phone: (845) 483-7100
Fax: (888) 749-7747
gonnellia@thesultzerlawgroup.com
ATTORNEYS FOR PLAINTIFF